IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:15-cv-01940-MA |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| $22,600.00 U.S. Currency, *in rem*, | |
| Defendant. | |

MARSH, Judge

Plaintiff, the United States of America, brings this civil forfeiture proceeding pursuant to 21 U.S.C. § 881; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610. Currently before the Court is Claimant Andrew Harrison's Motion to Suppress (ECF No. 10). For the reasons set forth below, this Court denies the Motion.

## BACKGROUND

On October 14, 2015, the government filed its Complaint, alleging that the Defendant *in rem*, $22,600.00 in U.S. Currency, "represents proceeds traceable to an exchange for controlled substances or was used or intended to be used to facilitate such a transaction in violation of 21 U.S.C. § 801, *et seq.*" Compl. at 2. Attached to the Complaint is a Declaration by United States

1 - **OPINION AND ORDER**

Postal Inspector Brendan Soennecken describing the circumstances surrounding the seizure of the currency:

> 11. On April 24, 2015, I went to the Medford Mail Processing Center . . . as part of my regular investigatory duties. While at the Mail Processing Center, I reviewed express mail parcels that were inbound to Southern Oregon from Portland. While reviewing parcels, I noted U.S. Mail priority express parcel, number E1836835701US. The parcel was addressed to "Andrew Harrison Exposure SMI . . . with a return address of "Barry Abrams 1078 Kingsley Road, Rydal, PA 19046" . . . . I noted the parcel as having been mailed on April 23, 2015, from zip code 19006 which corresponds with Huntingdon Valley, Pennsylvania. The parcel was scheduled for delivery on April 25, 2015 . . . . The waiver of signature upon delivery was clearly marked and signed by the mailer of the parcel. Additionally, the parcel had been written on with large letters which read "Hold for Pick-up."
>
> 12. Medford Police Officer Rob Havice, a Certified Controlled Substance Dog Handler, and his certified controlled substance detective dog Narc were at the Mail Processing Center with me on April 24, 2015. Officer Havice provided me with a copy of a document outlining his qualifications and Narc's qualifications . . . . U.S. priority express parcel number E1836835701US was placed in a deployment line with five other similar control parcels for examination by Narc. . . . Officer Havice told me Narc alerted on the parcel . . . in the manner that he has been trained to alert when he detects the odor of a controlled substance . . . .
>
> 13. On April 24, 2015, I reviewed law-enforcement database information related to the sender and recipient of U.S. priority express parcel number E1836835701US. I learned both Andrew Harrison and Barry Abrams had given their correct addresses on the package. I also called a phone number I located for Andrew Harrison's business, Exposure SMI . . . . When I called the number it went to voicemail . . . which gave as its greeting the option to leave a message for either "Exposure SMI" or "420 Farms," 420 being a term used within the marijuana sub-culture.
>
> 14. On April 25, 2015, Medford Police Officer Rob Havice and I spoke with Andrew Harrison at his residence . . . . As I approached the locked gate of Mr. Harrison's property, I viewed the neighboring farm with Officer Havice. We could see extremely large (+8 feet) marijuana plants growing in one of two large green houses on the neighbor's property. . . .
>
> 15. At 9:32 a.m. on April 25, 2015, I called the number for Mr. Harrison given on the parcel . . . . Mr. Harrison answered and I told him I needed to speak to him about his parcel. He came to the gate for his driveway and spoke with Officer Havice and me. I introduced myself as a law enforcement officer and asked Mr. Harrison if he was expecting a parcel. He told me he was expecting a phone charger

2 - **OPINION AND ORDER**

> in the mail. I told Mr. Harrison I had a parcel for him and SMI Exposure, but I had some concerns about his parcel. I asked if his property was also called 420 Farms. He told me it was, but he also has a coconut water business which is part of Exposure SMI.
>
> 16. I told Mr. Harrison the parcel was from Pennsylvania and I believed it might be related to his business 420 Farms. He told me it had nothing to do with drugs and was related to his business SMI Exposure. I asked him what was in it and he told me it was probably about $20,000.00 and was probably for his import business. I asked Mr. Harrison what the money was for and he explained it was investment money and that he has a coconut water deal and needs money to pay for a container of coconut water/milk and he has to pay half down in order to buy the container of coconut water/milk.
>
> 17. I asked Mr. Harrison for consent to open the parcel. Andrew Harrison gave me consent to open the parcel and I did. Inside I found part of a cardboard box wrapped around a shoe box. Inside the shoe box were some receipts, a plastic bag, and a paper bag which had in it four individually-marked stacks of U.S. currency and a letter-size marked envelope of U.S. currency. The five groupings were marked as $5,000, $5,000, $5,000, $5,600 and $2000, totaling $22,600.

*Id.*, Ex. A (Decl. of Brendan Soennecken) at 4-7. In his subsequent deposition, Soennecken testified that the express package had a guaranteed delivery time of 3:00 p.m. on April 25, 2015, but was marked "Hold for Pickup" which was unusual. Decl. of Amy E. Potter (ECF No. 13), Ex. B at 37-38, 49-51; *see also* Ex. A (Dep. of Officer Robert Havice) at 43, 58. Soennecken testified that he placed the package in a deployment line for the reasons set forth in his answer to Claimant's Interrogatory number 2, which provides as follows:

> I noted the parcel was Priority Express Mail sent using an expedited service sealed from inspection. I noted the parcel was coming from Pennsylvania to Oregon. I noted the parcel was large, heavy and expensive to mail for Priority Express. I noted the signature requirement was waived which indicates the recipient couldn't or wouldn't personally be guaranteed to receive the parcel. I noted a twice handwritten message on the parcel requesting the parcel held for pick-up, which is unusual, and which I do not recall ever seeing before.

Claimant's Memo. in Supp. at 14-15; *see also* Decl. of Soennecken at ¶¶ 7, 10 (explaining that Priority Express Mail is used primarily for business-related mailings, waiving the recipient signature

3 - **OPINION AND ORDER**

allows mail carriers to leave parcel without interaction with the recipient of illegal, controlled substances, and drug traffickers in Oregon often mail marijuana to other states and cash payments are mailed in return).

Claimant moves the Court to suppress "all evidence related to and contained in the package carrying the defendant currency," because (1) the seizure of the package was without probable cause under the reasoning in *State v. Barnthouse*, 350 P.3d 536, 550-53 (Or. App. 2015), *aff'd*, 380 P.3d 952 (Or. 2016); (2) the dog sniff is of no consequence to the probable cause determination "because there is no particularity;" (3) the seizure of the contents of the package was without probable cause; and (4) due to spoliation of the evidence "there is not a basis to have probable cause to seize any or all of the currency." Claimant's Mot. to Suppress at 1-2.

## DISCUSSION

Because civil forfeiture proceedings are quasi-criminal in nature, the exclusionary rule applies, barring the admission of evidence obtained in violation of the Fourth Amendment. *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1165 (9th Cir. 2008); *United States v. One 1977 Mercedes Benz, 450 SEL, VIN 11603302064538*, 708 F.2d 444, 448 (9th Cir. 1983); *see also* Rule G(8)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The determination of whether a claimant's Fourth Amendment rights were violated is determined on the basis of federal law. *One 1977 Mercedes Benz, 450 SEL, VIN 11603302064538*, 708 F.2d at 448.

An addressee on a mailed package has a possessory interest in its timely delivery, and a privacy interest in its contents. *United States v. Jefferson*, 566 F.3d 928, 933 (9th Cir. 2009); *United States v. Hoang*, 486 F.3d 1156, 1159-60 (9th Cir. 2007); *United States v. Hernandez*, 313 F.3d 1206, 1209 (9th Cir. 2002). However, "a package addressee does not have a Fourth Amendment

possessory interest in a package that has a guaranteed delivery time *until* the guaranteed delivery time has passed." *Jefferson*, 566 F.3d at 935 (emphasis added). Hence, the "temporary diversion of a package that does not affect its regularly scheduled delivery does not violate the Fourth Amendment." *Hoang*, 566 F.3d at 1158, 1162; *Jefferson*, 566 F.3d at 933-35.[1]

Fourth Amendment privacy interests are "not implicated when only the external features of a package, like the address label are examined [because] there is no reasonable expectation that the outside of a package given to a mail-carrier will be kept private." *Hoang*, 566 F.3d at 1159-60; *Jefferson*, 566 F.3d at 933; *Hernandez*, 313 F.3d at 1209-10. Similarly, "the Fourth Amendment is not implicated by the use of a dog sniff by a trained dog to detect contraband in a package." *Hoang*, 566 F.3d at 1160; *Jefferson*, 566 F.3d at 933.

Based on the foregoing, this Court concludes that Claimant's Fourth Amendment rights were not implicated by the visual inspection of the package, its brief placement in a deployment line, and the use of a dog sniff which all occurred prior to the express delivery date of the package. Further, once the dog alerted to the package, probable cause existed to seize it. *Hoang*, 566 F.3d at 1160, n.1; *see Florida v. Harris*, 133 S.Ct. 1050, 1057 (2013) ("If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search.").

Claimant has proffered no evidence disputing the reliability of the dog or the drug alert at issue in this proceeding. *See Harris*, 133 S.Ct. at 1058 (opining that a defendant may challenge dog alert on these grounds). In this regard, the Court rejects Claimant's assertion that the dog alert is of

---

[1] Because federal law is controlling, this Court declines to adopt the Oregon Court of Appeals reasoning in *State v. Barnthouse*, 350 P.3d 536, 550-53 (Or. App. 2015), *aff'd*, 380 P.3d 952 (Or. 2016) (construing the Oregon Constitution). *See* Claimant's Mem.. in Supp. of Mot. to Suppress (ECF No. 11) at 9.

5 - **OPINION AND ORDER**

"no consequence" because it "occurred on what turned out to be a 'currency only' package." *See* Claimant's Mem. in Supp. of Mot. to Suppress at 10-11. The relevant inquiry is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Harris*, 133 S.Ct. at 1058. The fact that, when the package was searched, the officers discovered currency rather than drugs is of no consequence to the probable cause established to seize and open the package. Courts "do not evaluate probable cause in hindsight, based on what a search does or does not turn up." *Id.* at 1059.

This Court rejects Claimant's assertion that there was no probable cause to seize the package because it lacked any of the suspicious "cues" specifically outlined in paragraphs eight and nine of Soennecken's Declaration in support of the Complaint. *See* Claimant's Mem. in Supp. of Mot. to Suppress at 14-15.[2] The fact that Soennecken identified factors supporting the seizure of the package, which differed from the general indicators of drug trafficking summarized in his Declaration, is irrelevant to the probable cause inquiry.

This Court reject Claimant's assertion that "spoilation" of the evidence, i.e., depositing the currency into a bank, impacts the probable cause inquiry. Finally, this Court notes that Claimant offers no argument or evidence to support the conclusion that, based on the totality of the circumstances, his consent to search the package was involuntary. *See United States v. Basher*, 629 F.3d 1161, 1168 (9th Cir. 2011) (listing five factors used to determine voluntariness of consent to warrantless search).

---

[2] In paragraphs eight and nine of his Declaration, Soennecken states that he knows from training and experience that drug traffickers often use false or incomplete information in labeling their parcels, and wrap the parcels and their content in a manner to disguise their odor. Compl., Ex. A at ¶¶ 8, 9.

6 - **OPINION AND ORDER**

## CONCLUSION

Based on the foregoing, Claimant's Motion to Suppress (ECF No. 10) is DENIED.

IT IS SO ORDERED.

DATED this 2 l day of February, 2017.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

7 - **OPINION AND ORDER**